May it please the Court, I'm Karen Landau and I represent the appellant, Mr. Hays. The brief – there's three issues for the Court to decide today. The first is whether the district court erred in admitting the evidence that was seized from Mr. Hays' aircraft. As the Court may recall, the only evidence that the aircraft was not – the search of the aircraft was not authorized pursuant to the warrant, and the district court specifically found that it was not part of the curtilage. The district court concluded that the aircraft was nonetheless searchable under the automobile exception and that there was probable cause based on some very equivocal testimony that was given by Mr. Hays at the evidentiary hearing. Mr. Hays said to ER-20 in response to a question by the prosecutor, he said, Now, of course, I'm having difficulty finding the precise site. Did they also – okay. He said, yeah, it is at ER-20. Did you tell him where you thought the logbooks may be? Again, a fairly equivocal question. Response, I'm not sure. Could you have told them that the logbooks may be in your plane? Objection calls for speculation. And that objection was overruled. And Mr. Hays said, I believe so. We respectfully submit that that is not sufficient probable cause. At best, it's a very equivocal statement. The warrant itself provided probable cause to think that the logbooks were on the office shelf in the hangar. In fact, there were statements in the affidavit, which is in the excerpts, that stated the logbooks had been seen in the office and they were normally kept there. In addition, of course, this testimony was derived from the officer's – the agent's, I should say – illegal presence on the premises. The government has not addressed our argument that the search warrant was improperly particularized in that it authorized the seizure of almost all of the business records of Hays Aviation. What should the agents have done, assuming that they were told by Mr. Hays that there were records in the aircraft? They should have gone and got a search warrant at that point. Another search warrant. Yes. And actually, it's – well, I mean, that really doesn't address the derivative problem, but certainly they should have gotten another search warrant and let the judge evaluate whether these statements, A, were the fruit of an illegal search in the first place, in that they had already remained on the premises for five hours. And this is a small office area. It's very – and there were – as I pointed out in the brief, there were other – there were certainly – these were not the most credible or honest of agents. The district court specifically found that in other areas of their testimony, they had – they were not truthful. And it's unusual to find a ruling like that. If the – if they had – if they had asked the same question of him, but instead of – instead of saying the word aircraft or airplane, if they had said your car, and he had said, yeah, there might be some stuff in my car, what would the agents do at that point? Again, I think they would need to get a search warrant. I – we are – I'm not contesting that under Flickinger, the automobile exception would apply to an aircraft. We did not contest that in our brief, and I – it would be improper for me to argue that for the first time on a – in oral argument. You know, that is the law – from my reading, that's the law of the circuit. If there are no further questions on this – Well, let me just – let me just pursue it. Why would – why would the agents have to – if he said it's in my car, why would we – why would we have to – First of all, he didn't say it was in his car. No, but I'm substituting car for – for the word aircraft. No, no, no, but I'm – what I'm – using that as an example, he didn't say – he didn't say to the agents, I told them it was in my airplane or car, whichever. He said to the court, he said – the question itself, as I pointed out, was equivocal. Do you think you might have said this? And he said, I'm not sure. Yes, perhaps I said that. There was – in light of that, that's just not enough. If he had said – and, again, there was no finding that he was not credible, only the agents. Right. Yeah. Of course, that goes – that doesn't go to whether – to whether that would provide cause to do it, because that's what he's telling the court is his recollection of the possibility of his conversation. Right. If – if, in fact, he told the agents, yes, it might be in my plane, then at that point, do the agents have a right to go to the plane? Now, all he's done is confirm to the court that, yeah, his memory's dim, but it's possible that it's – it's possible he said that, but, yes, see, I think that that might be – if he said to the agents, it might be in my plane, that's not enough for probable cause, given that there's no other evidence. I mean, you know, there – first of all, I mean, most people keep business records in an office. It's not a logical place where you would necessarily expect to find business records like other people's maintenance, plane maintenance records. His plane maintenance records, maybe, but not other people's. And second of all, again, in this case, the affidavit clearly sets forth that a former client of Mr. Hayes, the subject of Count III, had seen the logbooks in this particular place, the FAA inspector had seen them there. And so there was – there was definitely a factual basis to believe that the – the maintenance records slot would be in the office. But it did occur to the agents that they might be in the plane. It did. Turned out to be a pretty good hunch. Yes, but probable cause is not equivalent to a hunch. It has to be something more. Shall I move on? You want me to move on? Okay. Well, maybe I misunderstood this, but didn't Hayes tell the agents that he had business records in his plane, in the airport? He didn't say it was not nearly that definitive. And I would remind the Court of our other argument, which is that it is still an improper derivative of the agent's unlawful presence in – on the premises. So under – Because of the overbreath? Yes, that's correct. That's correct. There's also – I'll address the arguments – well, we – as you may recall, we also raised a 404B – actually, it's really a 403 argument. In this case, there was evidence admitted of subsequent airplane inspections that tended to show the planes hadn't been inspected. That's what they tended to show. Our point is that while some of that evidence was admissible, it was not proper for the Court to allow the evidence that these – the defects in the plane – it was proper to show that they existed and the planes had been subsequently inspected, but it was not proper to allow the evidence that the defects – the meaning of the defects, that they could have resulted in catastrophic engine failure. That is the testimony that brings this case under Ellis and Hitt. That testimony, it was – certainly was not probative of – it was – it was cumulative at best on both falsity and materiality. And it – there was no – because it had such minimal probative value, it was improper. It was – it was clearly prejudicial, especially after 9-11. The idea that a plane is going to fall out of the sky is one – a thought that a jury is going to find quite disturbing. And then our last point is that there was a variance between the indictment and the evidence in – the instructions at trial and the evidence in the argument provided conviction based on a different false statement than that alleged in the indictment. Now, this is reviewed for plain error, but the – the focus of the government's evidence was in large part on the notion that Mr. Hayes – that someone had forged the signatures of the persons holding the rating. Now, forgery is evidence of falsity. It's not – it was not the actual false statement. The government could have charged the forgery as a false statement, but it didn't. It charged the false statement as that the plane was certified to have been inspected by the person holding the appropriate rating. And as I pointed out, it could prove falsity in two ways. One, by showing the plane had not been inspected, and the other by showing it had been inspected, but by a person who didn't have the rating. And it approached that in two different ways. But it focused on the forgery, and the – the jury instructions merely didn't even identify the false statement that the jury had to convict the defendant of at all. It just identified the elements of a false statement charge. Was it their testimony that the individuals who supposedly did the inspections hadn't done them? Well, there was some – well, one of the inspectors – yes, there was. The one – the one individual on account to the inspector himself, the person whose name was in the book, testified, I didn't inspect this plane. It's not my signature. I didn't do this. It's not my signature. I didn't do it. And then there was also the testimony of the handwriting analyst who said that's not his signature. Then as to the other two, the inspector was dead at the time of trial. He was alive at the time the plane in count one was signed off on. He was not alive at the time the plane in count three was signed off on. So, of course, the government argued that there was an inference – argued that, you know, well, A, he was dead by the time the third plane was signed off on. But I don't think that changes the fact that the evidence here did not specify the false statement. I mean, he was charged with specific false statements. And the government offered a way to prove other false statements. And the district court never clarified, you have to find and you have to agree that this is a false statement. The allegation of false statement was that the statement that John Doe, just to pick up on that, that John Doe was a certified annual inspector of this type of aircraft, in fact, on a date certain, did inspect this aircraft. That's correct. And that your client knew that that was not true. That's right. That's right. And isn't the proof consistent with that? It's not that the proof isn't consistent with that. It's that the proof is also consistent with enabling the jury – the proof also allowed conviction of a different false statement. For example, the proof allowed the jury to convict Mr. Hayes based on the fact – based on the idea that he certified that the name was false. See, if it only – the jury could have believed that the plane was inspected or even could have believed – well, there was no evidence that he held the inspection authorization. But because of the emphasis on the forgery, the jury could have convicted him just because it concluded that he wrote the name of somebody else. And that is not the charge. That's not the – no, that could have been the charge. It could have been added, but it wasn't. Do you have a little bit of time left? Did you want to say something? Thank you, Ms. Linder. Thank you. We'll hear from the government at this time. Mr. Parent? Good morning. My name is Mark Parent, and I represent the United States. First, as to the right for the agents to search the airplane, there's one additional piece of evidence about Mr. Hayes' statements on that day, and that would be at the Excerpt of Records on page 16, where he filed a declaration earlier in the case in which he said, The agents asked me about the logbooks for the planes that I worked on, and I pointed to a shelf with it where they were usually kept. I was asked if I kept any documents on the plane, and I told them that I sometimes did. So that is – that statement in his declaration is also consistent with his testimony during the suppression hearing where he said that when a question was, Could you have told them that the logbooks may be in your plane, he said, I believe so, yes. And Judge Armstrong concluded that that was sufficient, and the government agrees, for the agents to search the airplane without a search warrant because of its mobile nature. Now, when you combine that information with all the other information that was in the affidavit to search the Hayes Aviation, that provides probable cause to search the airplane. Now, the – as to the constructive amendment of the indictment, the allegation of a constructive amendment, the forgery was the means by which Mr. Hayes made the false statement. The forgery itself, the act of forging, was not necessarily a false statement, but that's how he made the statement that someone with an IA, that is an inspection authorization, had inspected the airplane, because the stamp in the logbook shows it has been inspected. The inspector's name is signed, and IA is after meeting inspection authorization. And that's precisely what was charged in the indictment. And the judge gave the model jury instructions regarding false statements and also provided a copy of the indictment to the jury. So the combination of the counts identified a separate and distinct instance in which a signature purportedly of an authorized annual inspector had actually made an inspection on the date indicated. That's correct. And the government's proof was that that simply didn't happen. The government's proof was that those inspectors or any authorized inspector did not inspect the planes on those dates. Rather, that that did not happen, that there was no authorized inspector who inspected it, and that the representation that that had occurred was made by Mr. Hayes, and he did that by means of forgery. And so I really don't think there was confusion at trial about what was what happened here or what the allegation was. And I think the judge's instructions combined with giving the jury the exact false statement in the indictment made any confusion very unlikely. As to the evidence of the problems that were discovered in two of the airplanes after the inspection supposedly occurred, it's important for a couple of reasons. One, it's true that the defects discovered were dangerous defects. They went to the very airworthiness of the airplane. But that dangerousness was important because it made it very unlikely that a flaw of that magnitude would have been missed by an inspector. So it was important to explain what the flaw was because the government had to prove by all this intersecting evidence that these inspections were not conducted by an authorized inspector. Why isn't this sentencing evidence and not responsibility evidence? Well, it's both. It was used at sentencing to enhance Mr. Hayes' sentence, but it also was relevant to whether the statements in the logbooks were false because it helped the jury determine whether the defect was found. Well, because if an authorized inspector had actually inspected those airplanes, as the logbooks represented, the logbooks represented that an inspection had been completed and that the airplanes were therefore airworthy. Even certified inspectors make mistakes, don't they? They do. But there were multiple of these mistakes. But isn't the crime complete when someone forges the name of an inspector on there to indicate that a proper inspection had been done? Yes. Crime's complete. If you establish that, all elements of the crime are proven. That's correct. Why do you need to point out to the trier the fact that these were, that some really bad things were missed in these inspections, so bad that they could have brought the aircraft down? Because the government has to prove that those statements are false. And showing that the falsity is writing the name down. John Doe I.A. or A.I. or whatever the proper initial is. Yes. That's the false statement, and that is complete the moment the pin is lifted off of the logbook, isn't it? That's correct. What the entry in the logbook basically is saying is, Wesley Bowen, for example, I'm an inspector with inspection authorization, and I have inspected this airplane, and I find it to be airworthy. That's the representation. Start with an answer to my question. Isn't the crime complete when the pin comes off the page in the logbook? It is. I agree with that. But the jury has to. What's the need or necessity for this? It's not an element of the crime, is it? It's not. The government has to prove that that statement is false. Okay. They don't even have to prove materiality, do they? Yes. The government has to prove materiality, which is the secondary reason that the statements were omitted by the district court. So there are two reasons that those statements were omitted. Isn't the materiality element established when it's shown by virtue of the false entry, the forged entry, that, in fact, there was no inspection, no proper inspection? Materiality is, yes. It allows that aircraft to continue to be flightworthy, to continue to be in the air. That's correct. Right? And that could affect the actions of the FAA, and there was testimony to that effect. And doesn't that establish materiality? It does. But the government – If nothing had happened to these planes post the purported inspection, nothing at all, they continued to be flightworthy, it would not have meant that there was no crime, right? Correct. It was still a crime to forge that name in the logbook. That's correct. And I can understand why at sentencing the fact that defects were missed that a normal, authorized, certified inspector would have found, and that some of these defects could have threatened lives might have been very important to sentencing. But what does it have to do with the elements of the crime? Because the government – the one element is the government has to prove that that entry was false. And one way to do that is to show that – But didn't you do that when you established that the signature was forged? Well, we established the signature was forged, in my view, but there was no stipulation to that effect, and the government has to prove this case beyond a reasonable doubt. And so we had evidence from several directions proving the falsity. One part of that evidence being that there was testimony – Is it your argument that that proof was necessary to show that a qualified inspection had, in fact, not been done? It was helpful to prove that point. Now, there was – as I said, there was evidence from several different directions proving that element. But the fact that there – Well, the reason the seriousness is important is because the testimony was by the mechanics who testified about their examination of the plane later was that these defects, in their judgment, were present at the time the plane was supposedly inspected. So that can help the jury draw an inference that if a qualified inspector would not have let those serious defects pass. So the fact that they were so serious is important to help show that the plane probably wasn't inspected at all. So they were testifying about conditions that the mechanics thought were present at the time the logbooks were certified. They said, for example, in the Borman airplane, in 60 hours of flight time, this problem would not have presented itself. This must have been present much earlier, in fact, a time before these logbooks were signed certifying that the plane was airworthy. So that helps the jury draw the inference that the airplane probably was not – either not inspected at all or not inspected by an inspector with inspection authorization. So if it was just some trivial, small, minor problem and there was no evidence about how important it was, that evidence wouldn't be very helpful to the jury. That's why it was important to show an inspector would not have missed it. I'm still having trouble getting from the defect is serious to this is what could have happened if the plane was in the air. Okay. Well, it goes to why the defect is serious. For example, a hole in the muffler, the jury is entitled to and the government is entitled to prove we're proffering that this is important and an inspector would have caught it. Why? Because it's a very serious problem. It can cause carbon monoxide to come into the cabin and make the pilot go to sleep and thereby the plane would crash. That's how important it is and that's why the inspectors know to look for that. But obviously in this plane, the inspectors didn't look for it or didn't catch it. And so there were several items like that that were that – with that kind of seriousness that helped show that the inspections either never occurred or were certainly not done by a person qualified as an inspector. And just as to materiality, I think that evidence is less important for the materiality element, but the government still was required to prove beyond a reasonable doubt that the statements were material. There was no stipulation to that effect. And as Judge Armstrong ruled pretrial, this evidence also is helpful to show why these certifications are important to the government and why it could influence the government's activities. That is because they're designed to catch such serious problems. So I submit that on either of the three grounds that the appellant claims, is there any – Let's say hypothetically that you have this exact same case and in fact one of the aircraft falls out of the sky and a later investigation determines that it was due to a defect that should have been caught in a proper annual inspection. Would you have been able to admit that evidence? I think so, because there is – I think if a plane actually crashes and we have not just the possibility of people being killed or injured, but the actual fact that it occurred, there is a greater danger of prejudice in that case. But the evidence is still relevant to show that an inspection was not done by a qualified inspector. But I think as you – as the consequences become more real, it would be a tougher call, discretionary call by the district. So if it's two people that die in the crash, it's okay, but if 15 die, it's not? Well, no, I didn't mean that. I meant an actual accident that hurts people as opposed to the possibility of an accident, which is what we had in this case. Nobody was actually hurt in this case. It was just the potential for that occurring. Okay. If there are no further questions, I will submit. Okay. Thank you for your argument, rebuttal argument. Ms. Landau. On the evidence of the catastrophic failure, the potential for catastrophic failure, it's important to recall that the government – there are – the government presented a lot of evidence on both the elements of falsity and the elements of materiality that was – that was not unduly prejudicial to government. On falsity, they had the forgery evidence, of course, and then they also had testimony from people who said, well, I didn't see him working on this plane that was sitting around. So there was that evidence as well. On the evidence of materiality, they presented an FAA inspector who explained why it was important to have accurate records. So the court is required to consider what other evidence there is when it evaluates the relative probative value versus the undue prejudice. Again, we are only contending that it was the – we are not contending that they couldn't admit – they couldn't introduce evidence of subsequent inspections or even that the inspectors couldn't say, an authorized inspector, you know, this should have been found. What we're talking about is the evidence of catastrophe. And that's precisely what happened in Ellis, where the court held that it was improper to allow testimony that the explosives found could have blown up a house or a car. If there's no further questions, I'll stop there. Roberts. Thank you. Thank both counsel for their arguments. The case just argued will be submitted for decision, and we'll proceed to the last case on the calendar this morning, which is the United States against Tang. Counsel will come forward. Counsel. Counsel? May it please the Court. Good morning, Your Honors. My name is Christopher Cannon.
judges: Lay , Hawkins, Bybee